# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| JAY STEINBERG, Chapter 7 Trustee | ) | |
| of Resource Technology Corp.; | ) | |
| CHIPLEASE, INC.; and ILLINOIS | ) | |
| INVESTMENT TRUST NO. 92-7163, | ) | |
|  | ) | |
| **Appellants,** | ) | |
|  | ) | |
| vs. | ) | **Case Nos. 06 C 7153 & 06 C 7154** |
|  | ) | |
| THE CITY OF CORPUS CHRISTI, | ) | |
|  | ) | |
| **Appellee.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In these consolidated appeals, Chiplease, Inc., Illinois Investment Trust No. 92-7163, and the Chapter 7 Trustee of Resource Technology Corporation appeal the bankruptcy court's order denying a motion by the Trustee seeking to assume and assign to Chiplease and the Trust a contract between RTC and the City of Corpus Christi, Texas. The real parties in interest in the appeals are Chiplease and the Trust, to which the Court will refer as "appellants." For the reasons stated below, the Court affirms the ruling of the bankruptcy court.

## Facts

Before it was put into involuntary bankruptcy, RTC was in the business of extracting methane gas from landfills and disposing of it or converting it into usable energy, which RTC then sold. On November 26, 1996, RTC entered into a contract with the City of Corpus Christi, which operates the J.C. Elliot Landfill in Corpus Christi, Texas. Under the agreement, RTC was to construct and operate a gas collection and conversion system at the landfill. The agreement

had a term of ten years, to expire on November 26, 2006.  *See* Agreement § 6(a), Appellee Ex. B.

The agreement required RTC to obtain all permits necessary to install, operate, maintain, repair,

and replace the collection and conversion systems.  Additionally, the agreement contained a *de*

*facto* termination clause, which provided:

> The Contractor [RTC] will pursue field testing, licenses, permits, and sales contracts in
> an expeditious manner and at its own expense.  Any lapse of 90 days in operation of the
> Collection System or Conversion System constitutes a *de facto* abandonment and a
> Termination Event.  The Contractor [RTC], at its option, may also abandon this
> Agreement by providing a certified letter to that effect to the City Manager.  Such
> abandonment constitutes a Termination Event.

*See id.* § 8.

In 1999, RTC was put into involuntary Chapter 7 bankruptcy and later converted its case

to a Chapter 11 reorganization.  On October 23, 2001, RTC and Corpus Christi entered into an

agreed order to cooperate, in an attempt to salvage their 1996 agreement.  In the agreed order,

the parties agreed to use their best efforts to receive permit approval from the Texas Natural

Resource Conservation Commission (TNRCC).  For the landfill project to proceed, TNRCC had

to issue certain permits for construction of a gas recovery and conversion system at the landfill.

The record reflects that in November 2001, RTC had presented to Corpus Christi a Class

1 permit modification application that required the City's signature before it could be submitted

to the TNRCC.  On January 11, 2002, Corpus Christi sent RTC a letter in which it raised

questions concerning RTC's permit application and asked RTC to add certain information.  RTC

contends that Corpus Christi's comments regarding the permit application related to construction

issues rather than permitting issues and that the issues the City raised in the letter were mere

pretexts to avoid signing the permit modification application.  RTC, however, did not respond to

Corpus Christi's January 2002 letter, address the City's concerns, or raise any disagreement with the City's requested additions to the permit modification application.

After receiving no response to its January 2002 letter, Corpus Christi sent a letter to RTC on July 3, 2003, explaining that due to RTC's defaults under the agreed order, Corpus Christi considered the agreement terminated. On August 4, 2003, RTC responded to Corpus Christi's July 2003 termination letter, disputing several of the points raised in the letter. The City did not respond to RTC's August 2003 letter.

Chiplease and Trust No. 92-7163 hold secured pre-petition and Chapter 11 claims against RTC. As a result of these interests, they obtained rights to purchase certain RTC assets.

On May 26, 2006, Chiplease filed a motion asking the bankruptcy court to compel the Chapter 7 Trustee to file a motion to assume the November 26, 1996 agreement between RTC and Corpus Christi and assign the agreement to Chiplease or its designee, Illinois Investment Trust No. 92-7163. On June 29, 2006, the Bankruptcy Court entered an order granting the motion to compel.

On July 7, 2006, the Trustee filed the motion to assume and assign. Corpus Christi objected to the motion and argued that before ruling, the bankruptcy court needed to decide whether the agreement had already terminated due to RTC's alleged default. More specifically, the City argued that the agreement had already terminated due to RTC's defaults and that in any event, the agreement was set to expire a few months hence, on November 26, 2006. Corpus Christi contended that the only way to renew the contract was if the parties consented, which the City said it would not do.

On October 30, 2006, the bankruptcy court held an evidentiary hearing on these preliminary issues. Following the hearing, the court denied the motion to assume and assign. The court concluded that the agreement between RTC and Corpus Christi had terminated on July 3, 2003, when, after receiving no response to its January 2002 letter, Corpus Christi sent its termination letter to RTC. The bankruptcy court noted that RTC had not responded to Corpus Christi's January 11, 2002 letter for over eighteen months. The court found that this delay amounted to a "failure to comply with the requirement imposed by the agreed order to 'cooperate and use its best efforts' to present the permit modification application to the Texas regulatory agency." *See* Oct. 30, 2006 Tr. 239-40. The bankruptcy court further ruled that Corpus Christi's termination of the agreement was further justified because RTC had terminated its contractor, Weaver Boos & Gordon (WBG), for the landfill project, which the court held constituted a breach by RTC of a provision of the agreed order. Because the agreement had been terminated, the court denied the Trustee's motion to assume and assign the agreement to appellants.

Appellants contend the bankruptcy court erred when it held that RTC's agreement with Corpus Christi had terminated. They first argue that the bankruptcy court ruled on an issue not before it in finding that the Corpus Christi agreement had terminated in July 2003. Appellants next contend that the City's actions after the July 2003 letter essentially waived any claim that the July 2003 letter terminated its agreement with RTC. Third, appellants contend that the bankruptcy court erred when it held that RTC terminated WBG and concluded that terminating WBG constituted another breach of the agreement by RTC. Fourth, appellants argue that the bankruptcy court erred by failing to find that the City acted unreasonably when it refused to sign the permit modification application. Finally, appellants contend that the bankruptcy court erred

by failing to find that Corpus Christi improperly repudiated the agreement or obstructed RTC's performance under the agreement, such that the term of the agreement should be extended.

## Discussion

The Court reviews the bankruptcy judge's conclusions of law *de novo* and reviews his factual findings for clear error. *See In re Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995); *Matter of Woodbrook Assocs.*, 19 F.3d 312, 316 (7th Cir. 1994). "The clearly erroneous standard . . . does not permit a trier of fact to be overturned 'simply because [the appellate court] is convinced it would have decided the case differently.'" *In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir. 1989) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). Thus, if "two permissible conclusions can be drawn, the factfinder's choice cannot be clearly erroneous." *Id.* (citing *EEOC v. Sears, Roebuck & Co.*, 839 F.2d 302, 309 (7th Cir. 1988)). The bankruptcy court's interpretation of its own orders may not be reversed absent a "clear abuse of discretion." *Endois Corp. v. Employers Ins. of Wausau (In re Consolidated Indus. Corp.)*, 360 F.3d 712, 716 (7th Cir. 2004) (quotation omitted).

## 1.      The RTC–Corpus Christi agreement

The issue before the bankruptcy court was whether the RTC–Corpus Christi agreement, as modified by the contracting parties' agreed order, terminated prior to the Trustee's motion to assume and assign the agreement to appellants. The bankruptcy judge concluded that the agreement had been properly terminated due to RTC's breach and therefore held that the agreement could no longer be assigned. Specifically, the bankruptcy judge held that RTC breached its obligation to use its best efforts to present the Class 1 permit modification to the TNRCC when it failed to respond to Corpus Christi's January 11, 2002 letter for over eighteen

months.  The court explained that it believed the

> intent of the agreed order could not be complied with by an 18-month silence in response
> to the position taken by the City of Corpus Christi.  To comply with the provisions of the
> agreed order would have required RTC at a minimum to give an answer to each of the
> points raised by the January 11, 2002, letter stating its belief, if it had a belief, that the
> city was incorrect in its assertions.  Had there been such a response, it may have been
> appropriate for the city to have withdrawn its concerns, perhaps the parties could have
> reached accommodation.  Simple silence in response to that letter was an absence of best
> efforts to obtain the permit that was required to allow the construction to take place.

*See* Oct. 20, 2006 Tr. 240.  The court concluded that Corpus Christi was justified in sending its

July 2003 letter highlighting RTC's defaults and failure to comply with the requirements of the

agreed order, and it held that the letter terminated the parties' agreement.  The court concluded

that at the time of the Trustee's motion to assume and assign, there was no existing agreement to

assign to appellants.

Appellants argue that the bankruptcy judge, in deciding that the July 2003 letter

terminated the agreement, ruled on an issue that was not before him.  They argue that it was

unclear at the bankruptcy hearing that the court would consider evidence prior to October 2002,

which would have precluded consideration of Corpus Christi's January 2002 letter to RTC.

Appellants also contend that under Texas law, the agreement's "best efforts" clause is

unenforceable.

Corpus Christi responds that the issue being considered at the hearing in the bankruptcy

court was whether the agreement had terminated.  It argues that the bankruptcy judge's

determination that Corpus Christi's July 2003 letter terminated the agreement was, in fact,

pertinent to the key issue to be determined.  The Court agrees.  The bankruptcy court relied on

evidence presented at the evidentiary hearing to conclude that the agreement was no longer in

existence. The Court cannot say that the bankruptcy judge decided an issue that was not before him.

Appellants contend that it was unclear at the bankruptcy trial what the court was considering. Specifically, they argue that based on the bankruptcy judge's statements at trial, it appeared he would not consider evidence prior to October 2002, which would have precluded consideration of Corpus Christi's January 2002 letter to RTC. *See* Oct. 30, 2006 Tr. 35-36. Upon reviewing the portions of the transcript that appellants rely on, the Court disagrees with appellants' characterization of the bankruptcy judge's ruling. Appellants highlight a portion of the transcript where the bankruptcy judge stated "there is no need for me to consider what might have happened before 2002." *Id*. at 36. During this colloquy, the bankruptcy judge addressed whether appellants could submit evidence to the court regarding the construction issues which it alleged were pretexts for Corpus Christi's refusal to sign the permit modification application. *Id*. The court held that the evidence regarding any construction concerns with the two wells at the landfill was not relevant. The court stated:

> No, it's not true that any misstatements regarding the question of the two wells that were dealt with here would be relevant to what happened thereafter. If you can show that the claims that they're now relying on are not true, that there wasn't any real problem with RTC post-October 2002, you will win. If you can't show that, you'll lose. What happened previously isn't going to really bear on that. It's not a question of intent. It's a question of the actuality of the asserted problems. . . . What I am saying is that Corpus Christi, based on the statement that I just heard, contends that October 2002 was the beginning of RTC's nonperformance that they're contending gave rise to termination of the contract . . . . So there is no need for me to consider what might have happened before 2002. The question of their mental state, the mental state of the people in Corpus Christi really is not relevant. What's relevant is whether RTC failed to perform from 2002 forward. If you can show that there was no failure of performance that was not the result of obstruction by the City of Corpus Christi, you have the potential for prevailing. If you can't show that, if there are genuine problems caused by RTC prior – or subsequent to October 2002 as alleged by Corpus Christi, there may very well be grounds for finding that the contract ought to be extended due to obstruction from Corpus Christi. But if you

7

can't show that, then what happened prior to 2002 is not going to be very relevant.

*Id.* at 35-36.

It is clear from the context that the bankruptcy judge's statement that "there is no need for me to consider what might have happened before 2002" concerned the relevance of Corpus Christi's earlier actions and concerns regarding the construction issues with the wells at the landfill. There is no basis for appellants, based on their out-of-context reading of the bankruptcy judge's comments, to contend that they actually believed the judge was not going to consider RTC's failure to respond to Corpus Christi's January 2002 letter.

Appellants next argue that the best efforts clause of the agreement is unenforceable under Texas law.[1] To be enforceable under Texas law, a best efforts provision must serve as "some kind of goal or guideline against which best efforts may be measured." *CKB & Assoc., Inc. v. Moore McCormack Petroleum, Inc.*, 809 S.W.2d 577, 581 (Tex. App. 1991). So long as a best efforts clause is narrowly construed and interpreted as setting a guideline or goal for measuring a party's efforts, it will be enforced under Texas law. *See generally Herrmann Holdings Lt. v. Lucent Tech. Inc.*, 302 F.3d 552, 559-61 (5th Cir. 2002) (concluding that plaintiff stated a claim for breach of contract under the agreement's best efforts clause because the clause set a goal or guideline for defendant).

The best efforts clause in the RTC-Corpus Christi agreed order states that

[t]he parties will cooperate with each other and use their best efforts to present, and use their best efforts to receive approval from the Texas Natural Resource Conservation Commission ("TNRCC") of an agreed, no fault order (the "Agreed Order") providing for

---

[1] The agreement contains a choice of law provision stating that Texas law governs its interpretation. *See* Agreement § 18, Appellee Ex. B.

> (a) Class I Permit Modifications pursuant to title 30, TAC § 305.70 to enable (i) all necessary remediation (the "Remediation") to be performed on the existing landfill gas collection system (the "Collection System"), (ii) RTC to construct and install an upgrade (the "Upgrade") to the Collection System that, among other things, will enable the Collection System to be connected to the landfill gas cleansing/conversion system (the "Conversion System") and (iii) RTC to construct the Conversion System and (b) written approval from the TNRCC allowing RTC to proceed with exploratory and feasibility studies, including the taking of soil borings, prior to its achieving Type IX Beneficial Use Registration under title 30, TAC § 330.4(n) for the operation of the Conversion System. In addition, the City will cooperate and use its best efforts to assist RTC in attempting to obtain its Type IX Registration Co-Operation of the Conversion System.

*See* Agreed Order at 2, Appellee Ex. C.  To determine the validity of this provision, the Court must decide whether it sets a goal or a guideline to measure the parties' performance.

In *Herrmann Holdings*, the court addressed a best efforts clause similar to the one at issue here.  *See Herrmann Holdings*, 302 F.3d at 559-61.  The parties' agreement stated that defendant had to use its "'reasonable best efforts' to file and cause to become effective a S-3 covering the shares of Lucent stock."  *Id.* at 559.  The Fifth Circuit concluded that under Texas law, the best efforts clause of the agreement set a goal or guideline for defendant to file a registration statement and that the plaintiffs had stated a claim for breach of contract.  *Id.* at 561.

Similarly, RTC and Corpus Christi's agreed order required the parties to use their best efforts to present and receive approval of, among other things, the Class I permit modification from the TNRCC.  The bankruptcy court, in measuring RTC's performance on this point, underscored RTC's eighteen-month silence in response to Corpus Christi's January 2002 letter raising concerns about the draft permit modification application.  The court held that RTC's non-response to Corpus Christi's January 2002 letter requesting that additional information be added to the permit modification application constituted a failure to use its best efforts to present the

permit modification application to the TNRCC. The court noted that RTC did not respond to Corpus Christi until after it received the July 3, 2003 default and termination letter – over eighteen months after Corpus Christi had raised its concerns regarding the substance of the permit modification application.

Though RTC contends that Corpus Christi's requests in the January 2002 letter related to construction issues and not permitting issues, the proper time and place to make that point would have been within a reasonable period after Corpus Christi sent the letter, by way of a response, so that the issue could be addressed further. RTC's silence over a period of eighteen months, and as a result, its failure to apply for the Class 1 permit modification, were reasonably understood as noncompliance with the agreed order. The bankruptcy court's finding that RTC's inaction amounted to failure to use its best efforts to present the permit modification application to the TNRCC was not clearly erroneous.

## 2.      Corpus Christi's actions after the July 2003 letter

Appellants next contend that even if the July 2003 letter reflected Corpus Christi's termination of the agreement, Corpus Christi thereafter waived any contention that the agreement had terminated. Specifically, appellants argue that after sending the July 2003 letter, Corpus Christi acted as though it still had an agreement with RTC. Corpus Christi contends that appellants forfeited this issue by failing to raise it in the bankruptcy court.

Upon reviewing the record, the Court has failed to find argument by appellants in the bankruptcy court on this issue. By failing to mention this waiver issue in the bankruptcy court, appellants cannot raise it here on appeal. Arguments and facts raised for the first time on appeal but that were known or discoverable at the trial stage are considered waived. *See County of*

*McHenry v. Ins. Co. of the West*, 438 F.3d 813, 819-20 (7th Cir. 2006).

Even if appellants had not forfeited their waiver argument, the argument is lacking in merit. In support of their waiver argument, appellants urge that instead of barring RTC from the landfill, Corpus Christi allowed RTC's representatives access to the landfill to monitor the site. They also note that Corpus Christi waited more than twenty-nine months before filing its motion for relief from the automatic stay entered in the bankruptcy court. Appellants also argue that because Corpus Christi did not stand on its July 2003 letter as terminating the agreement, but rather filed suit in Texas state court to have the agreement declared terminated, then it could not have intended for the July 2003 letter to terminate the agreement. Corpus Christi, however, contends that the record does not establish that it waived its claim of termination.

Under Texas law, "waiver is a voluntary, intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *First Interstate Bank of Ariz. v. Interfund Corp.*, 924 F.2d 588, 595 (5th Cir. 1991) (applying Texas law); *see also Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 144 (Tex. App. 2006) (holding that waiver must be an intentional relinquishment of a known right and that waiver is typically a question of fact). To determine "if a waiver has in fact occurred, the court must examine the acts, words or conduct of the parties and it must be 'unequivocally manifested' that it is the intent of the party to no longer assert the right." *Guzman v. Ugly Duckling Car Sales of Texas, L.L.P.*, 63 S.W.3d 522, 528 (Tex. App. 2001) (citation omitted).

Appellants' focus on certain of Corpus Christi's actions subsequent to the July 2003 letter that they contend are inconsistent with the agreement's termination is problematic because they did not assert these points before the bankruptcy court. Appellants argue that they could not

have known that the bankruptcy court would rely on the July 2003 letter as terminating the agreement and that fairness thus requires that the Court allow them to present these new issues on appeal. The Court disagrees. As indicated in the previous section of this decision, there is no legitimate basis for a contention that appellants were unaware that Corpus Christi would rely on the July 2003 letter as effectuating the agreement's termination. By failing to raise these issues with the bankruptcy court, appellants have forfeited their claim that Corpus Christi's actions amounted to a waiver of the July 2003 termination.

In any event, the actions cited by appellants do not amount to an unequivocal manifestation of intent on Corpus Christi's part to waive its termination of the agreement. *See Guzman*, 63 S.W.3d at 528. To constitute waiver under Texas law, appellants needed to prove that Corpus Christi intentionally relinquished its claim to termination or acted as though the agreement was still in effect. *First Interstate Bank*, 924 F.2d at 595. The actions to which appellants make reference – Corpus Christi's motion for relief from the automatic stay and its pursuit of a declaratory judgment of termination in state court – evince the City's pursuit of the agreement's termination, rather than its treatment of the agreement as being in effect. These actions were anything but an unequivocal manifestation of intent to waive termination of the agreement.

3.     **Termination of WBG**

Appellants argue that the bankruptcy court erred in finding that RTC breached the agreed order by terminating WBG.[2] Retaining WBG was one of the requirements under the agreed

---

[2] The Court again notes that this was an alternative basis for the bankruptcy court's ruling against appellants.

order:

> RTC agrees that the engineering firm of Weaver Boos & Gordon ("WBG") will continue to oversee the Remediation and Upgrade of the Collection system and construction of the new Conversion System; provided, however, that if circumstances require that a new entity replace WBG, then such replacement can take place upon the consent of the Parties, which consent cannot be unreasonably withheld.

*See* Agreed Order ¶6, Appellee's Ex. C. Appellants contend the bankruptcy court erred in

finding that RTC committed this breach. They argue that Matt Stutz, an employee of WBG,

testified not that WBG had been terminated but rather that WBG had been put on hold and that

there was no requirement in the agreed order that WBG had to be continually employed by RTC.

In response, Corpus Christi highlights the following deposition testimony by Stutz, which

was admitted in evidence at the hearing:

> Q:  Okay. Now, after the remediation of those extraction wells occurred, did you then at that point begin working on the Class 1 Permit Modification for the J.C. Elliot landfill again?
>
> A:  No.
>
> Q:  Okay. Why not?
>
> A:  At that point because we were diverted off into doing remediation of the wells, those additional funds that we had in the original project budget had been used, so at that point, there was no money left for Weaver Boos to continue on with the permitting process and–
>
> Q:  Did you at that point ask RTC for additional funds to continue with the permitting the Class I Permit Modification?
>
> A:  I asked–you know, I asked them at the conclusion of the remediation of the wells what the next step was to proceed and was told at that time to not spend any more money on the project, and it remained on hold at that point.

Q:      Who told you to stop work on the project?

A:      Johnny Johnson.

Q:      And by "the project," are you referring to the Class I Permit Modification or the Type IX Registration?

A:      It was the–it was the same project.  Those were two tasks of the same project –

Q:      Okay.

A:      –so both of those tasks were–we didn't proceed any further with both of those tasks.

                                        ***

Q:      Okay.  And I'm just trying to determine when Weaver Boos & Gordon stopped working on the Corpus Christi project.

A:      From what I recall, it was in October of '02 when we had finally completed the remediation of the wells.

*See* Appellee Ex. D at 29-30, 76.

The bankruptcy judge also heard the testimony of John Connolly, RTC's president, that it was his understanding that WBG was not terminated but merely put on hold because there was nothing left to do with respect to permitting.  *See* Oct. 30, 2006 Tr. 155-56.  In his findings, however, the bankruptcy judge credited Stutz's testimony.  *Id*. 241.  Appellants argue that the bankruptcy judge credited the wrong version of events in drawing its conclusion that RTC had terminated WBG when the judge stated that "I take as credible the testimony of Mr. Stutz of the Weaver Boos & Gordon firm that RTC had terminated its services with respect to the remediation and upgrade of the collection system as of October of 2002 . . ."  *See* Bankr. Tr. 241. Instead, they argue, the project remained on hold at the conclusion of the remediation of the wells, as Connolly testified.

14

Corpus Christi contends that Stutz's testimony illustrates that WBG was not paid to do any further work for RTC after October 2002. The City argues that this amounted to termination of WBG's services.

Though the bankruptcy judge only had the transcript from Stutz's deposition, he did observe Connolly's testimony at trial. Unlike a reviewing court, the bankruptcy judge had a front-row seat to Connolly's responses to questions, his facial expressions, attitude, tone of voice, eye contact, and body language.

On appeal, the Court reviews the bankruptcy court's factual findings for clear error. *In re Sheridan*, 57 F.3d at 633. The Court may not overturn the bankruptcy court's decision "'simply because [it is] convinced that it would have decided the case differently.'" *In re Bonnett*, 895 F.2d at 1157 (quoting *Anderson*, 470 U.S. at 573). Appellants ask this Court to do just that, by crediting Connolly's testimony over Stutz's. The bankruptcy judge was entitled to credit or decline to credit the testimony of Stutz and Connolly, and his choice in that regard was not clear error. *Anderson*, 470 U.S. at 575; *see also Dunning v. Simmons Airlines Inc.*, 62 F.3d 863, 868 (7th Cir. 1995).

**4.      Whether Corpus Christi acted unreasonably**

Appellants argue that the bankruptcy court erred by failing to find that Corpus Christi acted unreasonably when it did not sign the Class 1 permit modification application that RTC submitted to the City for signature. As the Court has already discussed in detail, instead of signing the permit applications, the City responded to RTC with a letter in January 2002 that raised questions and concerns regarding the permit modification application. Corpus Christi's letter requested that RTC revise the permit application and add additional information. After

Corpus Christi sent the letter, it did not hear back from RTC for over eighteen months. Finally, on July 3, 2003, the City sent RTC a letter terminating their agreement.

Appellants contend that Corpus Christi presented no evidence that its refusal to sign the draft permit was justified. Failing to present evidence on this point, appellants argue, suggests that the City was not justified in refusing to sign the draft permit modification tendered by RTC.

Because appellants sought to prove that Corpus Christi acted unreasonably in refusing to execute the draft permit applications, they had the burden of proving that either the draft permit applications were adequate or that Corpus Christi's requests for additional information and modification were unreasonable. *See Auburndale State Bank v. Dairy Farm Leasing Corp.*, 890 F.2d 888, 893 (7th Cir. 1989) ("The general rule is that the party that asserts the affirmative of an issue has the burden of proving the facts essential to its claim."); *see also* Oct. 30, 2006 Tr. 11.

The bankruptcy court found that Corpus Christi raised its concerns about the permit applications in a prompt fashion by notifying RTC in January 2002 of its concerns and asking RTC to add information to the Class 1 application. Appellants have not offered evidence to show that Corpus Christi acted unreasonably in withholding its signature on the draft Class 1 modification permit application. As the Court has explained, it cannot overturn the bankruptcy court's decision simply because the record might have permitted a different finding, which is the most appellants have shown. *See In re Bonnett*, 895 F.2d at 1157 (quoting *Anderson*, 470 U.S. at 573). The bankruptcy court did not clearly err in failing to find that Corpus Christi acted unreasonably.

**5.      Whether Corpus Christi repudiated the agreement**

Appellants next argue that the bankruptcy court erred when it failed to find that Corpus

Christi repudiated the agreement such that the term of the agreement should be extended beyond the November 26, 2006 expiration date. The City contends that the record does not support a finding that it repudiated the agreement. It also argues that the agreement was not a lease or an "oil and gas lease" and the cases that extend such leases following repudiation are not applicable to this case.

Earlier in RTC's bankruptcy case, the bankruptcy judge ruled that a contract effectively indistinguishable from the Corpus Christi agreement was an executory contract rather than an unexpired lease. In that situation, the bankruptcy judge explained that

> [T]he word "lease" in [11 U.S.C.] § 365 should be read according to its ordinary meaning–and there is a well-understood, ordinary meaning of "lease": an agreement by the owner of property (the lessee), for a defined period of time, in exchange for payment ("rent") by the lessee, with the property reverting to the lessor at the end of the lessee's period of possession . . . . Under these definitions, the RTC/Allied agreement cannot be seen as a lease. First, Allied conveyed no exclusive right of possession in connection with the agreement; it did not "give up" possession and use to RTC. Rather, Allied merely gave RTC the right to use landfill property in connection with its gas collection and conversion activities, while Allied itself remained in possession of the property. Consistent with the general definitions listed above, the granting of a right to use property concurrently with the owner is not a "lease." More importantly, the grant of a right to use Allied's property was only incidental to the main purpose of the RTC/Allied agreement – the collection and conversion of methane gas. In rejecting the characterization of its agreement with Allied as a lease, RTC has argued that the agreement is actually a license, and the parties have engaged in extensive argument about whether "lease" or "license" more accurately describes the agreement. Neither label, however, captures the essence of the parties' contract. In reality, the agreement is *sui generis*, a unique contract dealing with an unusual situation–the disposal of a hazardous material which, properly processed, is worth more than the disposal cost. Thus, instead of being paid by Allied for disposing of gas from its landfills, RTC is required to pay Allied for the right to collect the gas. Nevertheless, collection and processing of the gas is the essence of the agreement, not possession and use of any Allied property. Accordingly, the RTC/ Allied agreement is not a "lease" or a "rental agreement."

*See In re Resource Tech. Corp.*, 254 B.R. 215, 225-27 (Bankr. N.D. Ill. 2000) (internal citations and footnotes omitted).

Similar to the agreement in the Allied/RTC dispute, the agreement at issue in this case did not give RTC exclusive possession of the landfill. Rather, Corpus Christi gave RTC the right to use the landfill property in connection with RTC's gas collection and conversion project while Corpus Christi remained in possession of the property. The same reasoning that the bankruptcy court used in its analysis of the Allied/RTC agreement, which this Court finds persuasive, applies equally here.

Corpus Christi did not convey an exclusive right of possession in connection with the agreement, and it did not give up possession to RTC. Instead, Corpus Christi gave RTC the right to use the landfill in connection with its gas collection and conversion activities. Under 11 U.S.C. § 365, giving the agreement its ordinary meaning, it was an executory contract, not a lease.

Appellants argue that regardless of whether the agreement was an oil and gas lease, by refusing to sign the Class 1 permit modification application, Corpus Christi repudiated the agreement and obstructed RTC from performing and enjoying the benefits of the agreement. Appellants contend that under Texas law, the term of the agreement should be extended for a period of time equal to the period during which Corpus Christi obstructed RTC from performing. They contend that the bankruptcy court clearly erred in failing to find that Corpus Christi repudiated the agreement.

Under Texas law, "repudiation of a contract occurs when one party to the contract, either through unconditional words or actions, refuses to perform its obligation under the agreement prior to the time when that performance is due." *See Costley v. State Farm Fire & Cas. Co.*, 894 S.W.2d 380, 386 (Tex. App. 1994). "Repudiation or anticipatory breach is a positive and

unconditional refusal to perform the contract in the future, expressed either before performance is due under the agreement or after partial performance has occurred." *See Van Polen v. Wisch*, 23 S.W.3d 510, 516 (Tex. App. 2000). For a party's actions to constitute a repudiation, the party to the contract must have absolutely repudiated the contract without just excuse. *Id.*

Appellants stake their claim that Corpus Christi repudiated the agreement on the City's decision not to sign the draft Class 1 permit modification application in January 2002. Under Texas law, appellants' characterization of the City's actions as repudiation is, to put it generously, a bit of a stretch. Rather than unequivocally refusing to sign the permit modification application, Corpus Christi asked RTC to add information to the application before the parties' submitted the permit modification application to TNRCC. As the Court has discussed, RTC then failed to respond to the City's requests for over eighteen months. As the Court has previously concluded, appellants failed to show that the City was unjustified in seeking revisions to the draft permit modification application before executing it.

Under the circumstances, the bankruptcy court did not clearly err in holding that Corpus Christi did not repudiate or obstruct its agreement with RTC. Under Texas law, Corpus Christi's July 2003 letter terminating the agreement did not qualify as a repudiation of the agreement. *See Exploracion De La Estrella Soloataria Incorporacion v. Birdwell*, 858 S.W.2d 549, 555 (Tex. App. 1993) (explaining that for repudiation to apply, the agreement must still be active; if the agreement has already terminated, then repudiation cannot excuse the party's nonperformance nor perpetuate the agreement). Having found that Corpus Christi did not repudiate or obstruct the agreement, the bankruptcy court properly held that the agreement had terminated and therefore could not be assumed or assigned.

**Conclusion**

For the reasons stated above, the Clerk is directed to enter judgment in each of these cases affirming the decision of the bankruptcy court.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:   June 26, 2007